UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCINDA WASHINGTON,

                      Plaintiff,

    -v-

SGT. DENNIS MELIS and
SUPERINTENDENT SABRINA KAPLAN,

                      Defendants.

No. 16-CV-6469 (KMK)

OPINION & ORDER

Appearances:

Lucinda Washington
Bedford Hills, NY
*Pro se Plaintiff*

Amanda C. Shoffel, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Lucinda Washington ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42 U.S.C. § 1983, against Sergeant Dennis Melis ("Melis") and Superintendent Sabrina Kaplan ("Kaplan") (collectively, "Defendants"), alleging that Defendants violated her constitutional rights by failing to protect her from an attack by a fellow inmate, allowing her to fall out of a prison van while handcuffed, and observing her while using the bathroom. (*See* Am. Compl. (Dkt. No. 11).) Before the Court is Defendants' Motion To Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 29.) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion. On July 1, 2016, Plaintiff "was brought to TBU" in Bedford Hills Correctional Facility ("Bedford Hills"), where she was held in keeplock.[1] (Am. Compl. 3.)[2] While in the TBU, Plaintiff was held with inmates that had "S[HU] status" and thus "had to rec [sic] with S[HU] status [i]nmate[s]." (*Id.*) On an unspecified date and time, between July 1, 2016 and July 6, 2016, Plaintiff was attacked by a "S[HU] status" inmate. (*Id.*) Plaintiff's hair was pulled out during this fight, and she was left with "a scar on [her] face [and] back pain." (*Id.* at 4.) As a result of the fight between Plaintiff and the other inmate, Plaintiff "ended up with seven more ticket[s]." (*Id.* at 3.) According to Plaintiff, this incident should never have occurred, "[s]ince [she] was keeplocked [and] [she] should have not rec there at all [sic]." (*Id.* at 4.)

Plaintiff also fell out of a van while she was held in handcuffs, though she does not specify a date, time, or location of this incident. (*See id.* at 3.) Also, on July 7, 2016, Plaintiff alleges that Melis pulled down a curtain while Plaintiff "was on the toilet." (*Id.* at 4.) Plaintiff

---

[1] Neither Party defines TBU, but the Court notes that a TBU is a "therapeutic behavioral unit" for female inmates. N.Y. Comp. Codes R. & Regs., tit. 7 § 320.3. It is the functional equivalent of a behavioral health unit for male inmates, which itself is a "separate housing location within a correctional facility designed to address the corrections-based therapeutic treatment of inmates currently diagnosed with a serious mental illness who, due to their behavior, would otherwise be serving a confinement sanction in a SHU or separate keeplock housing unit." *Id.*

[2] For ease of reference, given Plaintiff's use of a standard prisoner complaint form with additional pages attached, the Court cites to the ECF-generated page numbers stamped in the upper right-hand corner of Plaintiff's Complaint.

does not indicate if this occurred while she was in SHU or TBU, nor does she indicate what occurred following the alleged incident in the bathroom.

B. Procedural History

Plaintiff filed her Complaint on June 1, 2016, (*See* Compl. (Dkt. No. 1)), and Plaintiff's request to proceed in forma pauperis was granted on October 13, 2016, (*see* Order Granting IFP Application (Dkt. No. 8)). Plaintiff's initial Complaint named Melis, CO Woods, CO Fracis, and CO Ross as Defendants. (*See* Compl.) The Court issued an Order of Service on October 20, 2016, directing the U.S. Marshals to effect service on the named Defendants. (*See* Dkt. No. 10.) However, on November 17, 2016, Plaintiff filed an Amended Complaint, naming only Melis, OMH (the New York State Office of Mental Health or "OMH"), DOCS (the New York State Department of Corrections and Community Supervision or "DOCCS"), and Kaplan as Defendants. (*See* Am. Compl.) On January 12, 2017, Woods, Fracis, and Ross were served with the original Complaint, but they were no longer Parties to the Action by virtue of their exclusion from the Amended Complaint. (*See* Dkt. Nos. 12–15, 20.) On April 16, 2017, the Court issued an Order dismissing Defendants DOCS and OMH from the case as immune from suit pursuant to the Eleventh Amendment. (*See* Dkt. Nos. 17–18.) Kaplan was eventually served on August 25, 2017, (*see* Dkt. No. 23), while Melis was served on November 13, 2017, (*see* Dkt. No. 28).

On October 24, 2017, Defendants filed a letter seeking leave to file a Motion To Dismiss the Amended Complaint. (*See* Letter from Amanda C. Shoffel, Esq. to Court (Dkt. No. 24).) The Court set a briefing schedule, (*see* Dkt. No. 25), and Defendants thereafter filed their Motion To Dismiss and accompanying papers on December 11, 2017, (*see* Dkt. Nos. 29–30). Plaintiff did not respond to the Motion. The Court will therefore consider the Motion fully briefed, but independently consider the merits of the Motion. *See Goldberg v. Danaher,* 599 F.3d 181, 183

(2d Cir. 2010) (explaining that district courts should consider the merits of a motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond).

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. Nos. 29–30.) The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

B. Analysis

Although Plaintiff does not specify her exact causes of action, the Court construes her Amended Complaint as raising Eighth Amendment claims of failure to protect and cruel and unusual punishment against Kaplan as to her confinement in the TBU, and a violation of her right to privacy under the Fourth Amendment as to her interaction with Melis in the restroom. (*See* Am. Compl. 3–4.) The Court will address the claims against Kaplan and Melis separately.

1. Personal Involvement of Kaplan

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (same).[3] In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

---

[3] Though the decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), has called into question the validity of the *Colon* factors, this Court "has already expressed its agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise." *Samuels v. Prack*, No. 13-CV-8287, 2017 WL 934706, at *6 (S.D.N.Y. Mar. 8, 2017).

Plaintiff has not alleged any way in which Kaplan was personally responsible for, or involved in the circumstances that resulted in either her assault by a fellow inmate or her falling out of the van. In fact, Kaplan is not once mentioned by name or position in the body of the Amended Complaint, which is itself grounds for dismissal. *See Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but . . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability"). Further, the fact that Kaplan was the Superintendent at Bedford Hills is insufficient to show her personal involvement. It is well established that the mere existence of a "prison chain of command" is not enough to find that an official in Kaplan's position was personally liable. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that a prison official cannot be held personally liable for a constitutional violation merely "because [t]he[y] [are] in a . . . position of authority" at the prison). Moreover, "Plaintiff does not plausibly allege that [Kaplan] failed to act on information regarding the allegedly unlawful conduct or otherwise acted with gross negligence." *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *13 (S.D.N.Y. Mar. 13, 2018) (alterations and internal quotation marks omitted).

Accordingly, based on the lack of any allegations linking Kaplan to any of the injuries allegedly suffered by Plaintiff as a result of her assault and fall from the van, the Motion To Dismiss is granted as to Kaplan for lack of personal involvement.

### 2. Claim Against Melis

Plaintiff further alleges that, on July 7, 2016, Melis pulled down a curtain while Plaintiff "was on the toilet." (Am. Compl. 4.) Defendants argue that this allegation "is insufficient to state a claim because it does not amount to a constitutional violation." (Defs.' Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem") 4 (Dkt. No. 30).)

"The Fourth Amendment 'protects individual privacy against certain kinds of governmental intrusion,' and it is well-established that its protections extend to prisoners and pretrial detainees." *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (quoting *Katz v. United States,* 389 U.S. 347, 350 (1967)) (citation omitted). Thus, "although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." *Jean-Laurent v. Lawrence*, No. 12-CV-1502, 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013) (alteration and internal quotation marks omitted); *see also Little v. City of New York*, No. 13-CV-3813, 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014) ("Although the constitutional rights of prison inmates are restricted because of the institutional needs of imprisonment, the Fourth Amendment still requires that strip searches of inmates be reasonable." (citation omitted)).

Plaintiff was not subjected to a strip search by an officer of the opposite sex, but rather alleges that Melis pulled down a curtain while she was using the toilet. (*See* Am. Compl. 4.) Cases in the Second Circuit addressing an inmate's right to privacy have found "that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex . . . may be permissible," *Jean-Laurent*, 2013 WL 1129813, at *8 (internal quotation marks omitted), and is distinguishable from "'regular' and 'close' viewing . . . of a naked prisoner," *Little*, 2014 WL 4783006, at *2; *see also Israel v. City of New York*, No. 11-CV-7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding that "[t]he presence of other inmates and officers, males and

8

females, does not alter th[e] determination" that strip searches are constitutional); *Correction Officers Benev. Ass'n of Rockland Cty. v. Kralik,* No. 04-CV-2199, 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011) ("[O]ccasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but . . . 'regular and close viewing' is prohibited."); *Miles v. Bell*, 621 F. Supp. 51, 67 (D. Conn. 1985) (noting that the Second Circuit has found that "for inmates to show a violation of their privacy rights, they must show that the viewing by guards of the opposite sex occurs on a regular basis." (internal quotation marks omitted)). Here, Plaintiff has failed to allege any facts suggesting that there was any sort of regularity to Melis' conduct, nor does Plaintiff allege whether Melis even viewed her body at all. Rather, Plaintiff solely alleges that Melis "pull[ed] [her] curtain down while [she] was on the toilet." (Am. Compl. 4.) This allegation of a single incident, without any further detail as to what in fact occurred in the restroom, is insufficient to allege a violation of the Fourth Amendment right to privacy. Accordingly, this claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The second amended complaint will replace, not supplement, the instant complaint. The second amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

9

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 29), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED: May 22, 2018
     White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE